IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES W. DETMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-4177-CV-C-SOW |
| | ) | |
| CHARLENE COE GILMORE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

On July 9, 2009, United States Magistrate Judge William A. Knox recommended granting defendants' summary judgment motion and dismissing plaintiff's claims. The parties were advised they could file written exceptions to the recommendation, pursuant to 28 U.S.C. § 636(b)(1)(C).

The court has conducted a de novo review of the record, including the exceptions filed on behalf of plaintiff by his church pastor, Martin Luther Dzerzhinsky Lindstedt, of the Church of Jesus Christ Christian/Aryan Nations of Missouri, on August 19, 2009.[1] Plaintiff's exceptions do not support that there is a dispute of material fact that requires this case to go to trial. Plaintiff fails to come forward with evidence to support that defendants Charlene Coe-Gilmore, Dan Sullivan and Sharon Britten violated his constitutional rights in screening his mail and by instructing him that his grievance was not appealable through the internal grievance process.

The undisputed evidence shows that plaintiff was put on mail screening by a Fulton State Hospital (hereinafter "FSH") psychiatrist for purposes of helping plaintiff focus and progress through his treatment plan. Specifically, under the mail screen, plaintiff was not allowed to contact

---

[1]Plaintiff's filing of exceptions to the July 9, 2009 Report and Recommendation moots his previous motions seeking relief for his alleged inability to respond in opposition to defendants' motion for summary judgment.

individuals and facilities that have requested no further contract from him. In addition, plaintiff's mail was restricted to the extent it would distract from his treatment.

The evidence shows that plaintiff was denied the mail-order bride magazine, <u>Pacific Island Connection/Pacific Island Ladies</u>, because this mail contained pictures of Filipino women, with their information, including addresses and telephone numbers, who were seeking to marry American men, and defendants were concerned that plaintiff's receiving this publication would interfere with his progression in his mental health treatment program. The evidence shows there were concerns regarding plaintiff's lack of progress in his treatment program.

Analysis under the Fourteenth Amendment provides the standard for evaluating the constitutionally protected interest of individuals who have been involuntarily committed to a state facility. <u>See</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 312 (1982). In determining whether the constitutional rights of an involuntarily committed individual have been violated, the court must balance the individual's liberty interest against the relevant state interest with deference shown to the judgment exercised by qualified professionals. <u>Id.</u> at 321-22. Although plaintiff is an involuntarily committed patient, and is not a prisoner, his confinement is subject to similar safety and security concerns as that of a prisoner. <u>See</u> <u>Revels v. Vincenz</u>, 382 F.3d 870, 874 (8th Cir. 2004). Thus, the constitutional standards applied to an involuntarily committed mental patient are analyzed like that of a prisoner. <u>See</u> <u>id</u>. at 874-75 (holding that although mental patient's claim properly arises under Fourteenth Amendment, constitutional analysis applied to prisoner's Eighth Amendment claims was applicable).

While prisoners and those involuntarily committed, by virtue of their incarceration and custody status, do not forfeit their First Amendment right to receipt of mail, that right may be limited by institutional regulations that are reasonably related to legitimate penological or institutional interest. <u>Turner v. Safely</u>, 482 U.S. 78 (1987). The Supreme Court has held that prison regulations which restrict an inmate's access to publications are constitutionally valid when reasonably related to legitimate penological interests. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 404 (1989). Under the

Court's Turner analysis, rehabilitation is a legitimate institutional interest which can justify regulating access to certain publications without violating the institutionalized person's constitutional rights. Dawson v. Scurr, 986 F.2d 257 (8th Cir. 1993).

In the instant case, plaintiff has failed to come forward with evidence to contradict defendants' evidence that his Pacific Island Connection mail was being screened in conjunction with his mental health rehabilitation goals. In the absence of contrary evidence, the court defers to the defendants' professional judgment that the screening of plaintiff's mail was done for legitimate concerns regarding his rehabilitative treatment environment. Such legitimate rehabilitative concerns can properly warrant restrictions without violating the institutionalized person's constitutional rights. There is no evidence to show that the screening of plaintiff's mail was not content neutral such that it would implicate his First Amendment freedoms. See Dawson, 986 F.2d at 261 (when prison administrators distinguish between publications on the basis of their potential implications for prison security and rehabilitation, they are neutral).

No reasonable jury could find that the constitutional rights of plaintiff, a Fulton State Hospital client who suffers from a severe and persistent mental health disorder and has been found incompetent to stand trial on the charge of murdering his father, were violated when the evidence shows FSH defendants allowed him to receive and send mail from businesses and individuals outside the institution, including correspondence with the court, but screened his mailings, such as the Pacific Island Connection, in conjunction with the goals of his mental health treatment plan.[2] See Turner v. Safely, 481 U.S. at 89-91 (discussing factors considered in determining whether institutional restrictions are reasonable, and therefore, do not violate a prisoner's rights).

Plaintiff's claims that his constitutional rights were denied when defendant Coe-Gilmore denied him a college course credit class by mail are not supported by the evidence. The undisputed

---

[2]Defendants also have evidence supporting concerns that plaintiff's publication would be shared with other FSH clients, thereby potentially inhibiting these additional FSH clients' mental health treatment progression, in addition to plaintiff's.

3

evidence shows that plaintiff was denied enrollment in the class because he had a history of acquiring a service, then claiming he was not satisfied with the service and then would refuse to pay for the service. Additionally, the college course was for an MBA program, and plaintiff did not have a college degree. Moreover, the cost was between $2,000 and $3,000, and plaintiff had only $200 in his account. Plaintiff has come forward with no evidence to show he was denied the class because defendants were denying him his rights under the First Amendment.

As to the denial of plaintiff's mail correspondence with organizations which give prisoners free books, the evidence shows this was based on plaintiff's mental health treatment goals which included plaintiff accepting that he was not a prisoner, but rather was at FSH because he suffered from a mental illness, and was supposed to be working on understanding and treating his mental illness. There is no evidence that this was done as a censorship of expression in violation of plaintiff's First Amendment rights. As set forth above, rehabilitation is a legitimate institutional interest which can justify regulating access to certain publications without violating the institutionalized person's constitutional rights. Additionally, the court notes plaintiff subsequently did mail letters to the Books Through Bars and Prison Literacy Project from which he has received one book in response.

Plaintiff's only claim against defendant Sullivan is that he withheld two copies of Prison Legal News. Plaintiff has failed to come forward with evidence to contradict defendant Sullivan's evidence that those two magazines were withheld only temporarily because Sullivan mistakenly believed plaintiff was not allowed to have them. The evidence shows that after learning the magazines were allowed, Sullivan gave both copies to plaintiff and the magazines were never withheld again. Here again, there is no evidence to show that these two magazines were withheld in violation of plaintiff's First Amendment rights.

Plaintiff's only claim against defendant Britten is that she instructed him that his grievance regarding his mail being screened by Coe-Gilmore was not internally appealable at FSH. The evidence shows that plaintiff was informed that the doctor had ordered that all his mail be screened,

and therefore, because the issue was a medical treatment issue, it was not appealable. The fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). An institutional grievance procedure is a procedural right only, and does not give rise to a liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment. Id. A failure to process grievances without more is not actionable under 42 U.S.C. § 1983. Id. Plaintiff's allegation that Britten did not properly respond or process his grievance fails to set forth facts showing Britten violated his constitutional rights.

For the reasons set forth above, the court is persuaded that the recommendation of the Magistrate Judge is correct and should be adopted. Summary judgment is granted.

Inmates who file an appeal with the United States Court of Appeals for the Eighth Circuit are required to pay the full $455.00 appellate filing fee, regardless of the outcome of the appeal. Henderson v. Norris, 129 F.3d 481, 484 (8th Cir. 1997). The filing of a notice of appeal is considered a consent by the inmate to allow prison officials to deduct an initial partial appellate filing fee and later installments from the prisoner's account.

IT IS, THEREFORE, ORDERED that the Magistrate Judge's July 9, 2009 Report and Recommendation is adopted. [220] It is further

ORDERED that defendants' motion for summary judgment is granted and plaintiff's claims are dismissed. [177]. It is further

ORDERED that plaintiff's remaining motions seeking relief for his alleged inability to respond in opposition to defendants' motion for summary judgment are denied as moot. [221, 222, 224].

/s/ Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

DATED: September 8, 2009
at Kansas City, Missouri

5

Case 2:07-cv-04177-SOW   Document 233   Filed 09/08/09   Page 5 of 5